UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ZACHARY M. SCIALDONE,

         Plaintiff,

                Case # 16-CV-6433-FPG

v.

                DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

  On June 27, 2016, Zachary M. Scialdone ("Scialdone") brought this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

  On July 19, 2017, the Court granted counsel's motion to substitute party due to Scialdone's sudden death on June 24, 2016. ECF No. 19. Accordingly, Scialdone's father, Gary Scialdone ("Plaintiff"), is now the plaintiff in this matter.

  Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED. The Commissioner's decision is REVERSED and this matter is REMANDED solely for calculation and payment of benefits.

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

**BACKGROUND**

On March 4 and 28, 2013, Scialdone applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 165-72. He alleged disability since April 1, 2011 due to depression and attention deficit disorder ("ADD"). Tr. 198. On October 21, 2014, Scialdone, Plaintiff, and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge James G. Myles ("the ALJ"). Tr. 45-72. On November 19, 2014, the ALJ issued a decision finding that Scialdone was not disabled within the meaning of the Act. Tr. 31-41. On May 2, 2016, the Appeals Council denied Scialdone's request for review. Tr. 1-7. Thereafter, Scialdone commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)

---

[2]    References to "Tr." are to the administrative record in this matter.

(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to

show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Scialdone's claim for benefits under the process described above. At step one, the ALJ found that Scialdone had not engaged in substantial gainful activity since the alleged onset date. Tr. 33. At step two, the ALJ found that Scialdone has the following severe impairments: depression, ADD, and substance use disorder. Tr. 33-34. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 34-35.

Next, the ALJ determined that Scialdone retained the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. Tr. 35-39. Specifically, the ALJ found that Scialdone is limited to routine, unskilled work with only occasional interpersonal contact and cannot work with the public or in teams. Tr. 35.

At step four, the ALJ indicated that Scialdone has no past relevant work. Tr. 39. At step five, the ALJ relied on the VE's testimony and found that Scialdone can adjust to other work that exists in significant numbers in the national economy given his RFC, age of 21-years-old on the alleged onset date, high school education, and work experience. Tr. 40-41. Specifically, the VE testified that Scialdone could work as a linen room attendant, routing clerk, and cleaner. Tr. 40. Accordingly, the ALJ concluded that Scialdone was not "disabled" under the Act. Tr. 41.

4

## II. Analysis

Scialdone argues that reversal is required because the ALJ erred when he failed to give controlling weight to the opinion of his treating psychologist Jay A. Supnick, Ph.D. and that Dr. Supnick's opinion establishes that he is disabled.[3] ECF No. 12-1, at 17-20; ECF No. 15, at 4-7. The Court agrees.

### A. Dr. Supnick's Examination Findings and Opinions

The record contains a psychological report, medical source statement, and roughly 40 pages of treatment notes from Scialdone's treating psychologist Dr. Supnick. Tr. 293-96, 299, 302, 327-37, 349-73.

On September 18, 2014, Dr. Supnick authored a psychological report outlining the efficacy of Scialdone's treatment. Tr. 293-96. Dr. Supnick had 112 sessions with Scialdone over the course of three years. Tr. 293. For the first two years of therapy "the challenge was to reduce [Scialdone]'s suicidality and increase his functional abilities." *Id.* Dr. Supnick indicated that when Scialdone "was not actively suicidal, he remained extremely depressed." *Id.*

Dr. Supnick's report detailed Scialdone's work history. Tr. 294. When Scialdone began treatment in 2011, he was working as a movie theater usher, which he found "very stressful" even though it was not demanding. *Id.* He was fired after failing to show up for work. *Id.* Scialdone later worked at Home Depot, but stayed there only a short time because he "had great difficulty interacting with coworkers and his supervisor." *Id.* In 2012, Scialdone worked as a parking lot attendant. *Id.* Despite the simplicity of this job, he found it "intensely stressful" and became "more depressed, dysfunctional, and suicidal." *Id.* He was let go from this position because he

---

[3] Scialdone advances other arguments that he believes warrant reversal of the Commissioner's decision. However, the Court will not address those arguments because it disposes of this matter based on the ALJ's improper evaluation of Dr. Supnick's opinion.

did not show up for work. Tr. 293. Interestingly, Dr. Supnick noted that Scialdone's suicidal symptoms retreated once he stopped working. *Id.* He also noted that Scialdone "starts out fairly well" at new jobs, but "shortly thereafter . . . becomes more depressed, starts taking less care of himself, dressing disheveled, and stops functioning to the point that he is fired or leaves." Tr. 294.

A mental status examination of Scialdone revealed that he had very slow but logical and coherent thought processes; could not turn thoughts into action; demonstrated poor problem solving; felt depressed and irritated and had little sense of meaning; admitted to suicidal ideation; and had limited judgment and insight into his condition. Tr. 296. Dr. Supnick assessed Global Assessment of Functioning ("GAF") scores of 10 upon initial evaluation and 25 at the end of the session.[4] *Id.* Dr. Supnick opined that Scialdone's prognosis was "very poor." *Id.*

On October 16, 2014, Dr. Supnick completed a medical source statement wherein he opined that Scialdone could not return to his former occupation and should not perform other full-time work. Tr. 299. He based this opinion on Scialdone's inability "to tolerate the stress of work and interpersonal contact with others to the point that his depression increases and he becomes suicidal." *Id.*

Dr. Supnick opined that Scialdone has "moderate" limitation[5] in his ability to understand, remember, and carry out short, simple instructions and to understand and remember detailed instructions. Tr. 300. He opined that Scialdone has "marked" limitation[6] in his ability to carry out

---

[4] Mental health professionals use GAF scores to rate an individual's level of social, occupational, and psychological functioning. Tr. 36. The score represents a practitioner's subjective assessment of the patient's functional capacities for the preceding 12 months along a hypothetical continuum of mental illness ranging from 1 to 100, with 100 being the highest level of functioning. *Id.* Scialdone's GAF score of 10 indicates that he was "persistently suicidal" or "incapable of meeting even minimal personal hygiene standards" and his score of 25 indicates that he had "severe problems." MentalHelp.Net, What Does GAF Stand For?, https://www.mentalhelp.net/advice/what-does-gaf-stand-for/ (Mar. 15, 2000) (last visited Aug. 16, 2017).

[5] A "moderate" limitation means that the individual is moderately limited in his or her ability to perform the identified activity but can still function satisfactorily. Tr. 300.

[6] A "marked" limitation means that the individual is seriously limited in his or her ability to perform the identified activity. *Id.* The ability to function is severely limited but not precluded. *Id.*

detailed instructions and to make judgments on simple work-related decisions. *Id.* Dr. Supnick supported this assessment by explaining that "[i]n the past, even jobs with little demand have led to an increase in symptoms of depression and suicidal ideation and intent." *Id.*

Dr. Supnick further opined that Scialdone has "extreme" limitation[7] in his ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to work pressures and changes in a usual work setting. Tr. 301. Dr. Supnick supported this opinion by noting that interpersonal contact at Scialdone's prior jobs increased his anxiety and depression to the point of suicidal ideation and intent. *Id.*

### B. The Treating Physician Rule & the ALJ's Evaluation of Dr. Supnick's Opinion

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

---

[7] An "extreme" limitation means that the individual has major limitation and no useful ability to function in the identified area. *Id.*

7

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ summarized Dr. Supnick's findings and concluded that his opinion was entitled to only "some weight." Tr. 37, 39. The ALJ discounted Dr. Supnick's opinion because (1) his findings are "far more suggestive than the evidence supports;" (2) his findings are "somewhat consistent with the [RFC];" and (3) it is "inconsistent with the great weight of the evidence" based on Scialdone's "reported daily activities, including his ability to drive, manage his personal care, cook and . . . socialize with his friends." Tr. 39. The Court finds that these are not "good reasons" for discounting Dr. Supnick's opinion and that substantial evidence supports Dr. Supnick's opinion that Scialdone could not sustain full-time work.

1.  **Consistency with the Evidence of Record**

The ALJ noted that Dr. Supnick assessed Scialdone's GAF scores at 10 and 25 and opined that Scialdone had "extreme limitations in his ability to deal with others." Tr. 39 (citing Tr. 293-96, 299-301). The ALJ concluded that Dr. Supnick's findings are "far more suggestive than the evidence supports" and that "Dr. Supnick's GAF scores are consistent with total incapacity or an institutional level of mental illness, and in fact were present upon [Scialdone's] [hospital] admission in July 2011." *Id.* (citing Tr. 258-78).

Despite this assertion, the ALJ did not cite to or explain what evidence contradicts Dr. Supnick's opinion. In fact, the ALJ's decision reveals that Scialdone was hospitalized in July of 2011 after he attempted suicide by "cut[ting] his wrist with a razor" and that he was diagnosed with major depression, dysthymia, and substance abuse. Tr. 36 (citing Tr. 260, 262). His GAF score was 21-30, which indicates "behavior considerably influenced by delusions or hallucinations," "serious impairment in judgment [and] communication," or "inability to function in almost all areas." Tr. 262. A July 12, 2011 treatment note diagnosed severe major depressive disorder and indicated that Scialdone had ongoing suicidal thoughts. Tr. 37, 305, 307.

Moreover, Scialdone testified that working makes his stress level "extremely high" and that he finds himself "becoming suicidal." Tr. 50. He stated that it is "hard to form relationships at work" and that he has obsessive thoughts and feels like he must "escape." Tr. 50-51, 53-54, 56. Scialdone indicated that at previous jobs he would "feel suicidal" and have "obsessive thoughts about . . . planning and writing notes." Tr. 56. Scialdone's father testified that Scialdone has "tried job, after job, after job" and they "made him anxious." Tr. 58. His father explained that recently "it was the worst case of [Scialdone] being suicidal" and that Scialdone's "psychologist said he thought [Scialdone] should stop working or he was going to kill himself." Tr. 58-59. He testified that since Scialdone has been out of work, however, his suicidal ideology stopped. Tr. 59-60.

Despite the ALJ's assertion that Dr. Supnick's findings are "far more suggestive than the evidence supports," the evidence supports Dr. Supnick's opinion that Scialdone was severely depressed and suicidal, which interfered with his ability to function.

### 2. Consistency with the RFC

The ALJ also discounted Dr. Supnick's opinion because "his findings are somewhat consistent with the [RFC], as limitations in [Scialdone]'s ability to socialize are noted" and Dr.

9

Supnick "reported that [Scialdone] has logical, but slow thought processes."[8] Tr. 39. "Because an ALJ should use medical opinions to determine the RFC, the ALJ cannot give medical opinions weight based on their consistency with the RFC, as such reasoning is circular and flawed." *Simmons v. Colvin*, 15-CV-0377 (MKB), 2016 WL 1255725, at *15 (E.D.N.Y. Mar. 28, 2016) (citations omitted); *see also Snyder v. Colvin*, No. 13-CV-585, 2014 WL 3107962, at *6 (N.D.N.Y. July 8, 2014) (An ALJ's statement that a medical opinion is consistent with the RFC "suggests that [the ALJ] first determined [the plaintiff]'s residual functional capacity and afterward chose to give great weight to medical opinions coinciding with [his or] her predetermined finding. If so, [the ALJ] put the cart before the horse. Residual functional capacity is determined *after* and *in light of* credible medical evidence, not *before*.") (emphasis in original). Thus, this is not a "good reason" to discount Dr. Supnick's opinion.

### 3. Consistency with Daily Activities

Finally, the ALJ discounted Dr. Supnick's opinion because he found it "inconsistent with the great weight of the evidence" in light of Scialdone's "reported activities, including the ability to drive, manage his personal care, cook and . . . socialize with friends." Tr. 39. However, a claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), and "[p]erformance of daily activities is not necessarily a clear and convincing reason to discredit a [claimant's] testimony," *Beck v. Colvin*, No. 6:13-CV-6014 MAT, 2014 WL 1837611, at *14 (W.D.N.Y. May 8, 2014). Scialdone's basic and limited daily activities do not undermine Dr. Supnick's opinion that the stress and

---

[8] It is unclear how the ALJ, who is not a medical professional, determined that Dr. Supnick's finding that Scialdone had "logical, but slow thought processes" supported the RFC assessment despite Dr. Supnick's opinion that Scialdone could not work. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

interpersonal contact of full-time work increase his anxiety and depression to the point of suicidal ideation and intent.

Accordingly, for the reasons stated, the Court finds that an assessment of the relevant factors demonstrates that Dr. Supnick's opinion was entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Dr. Supnick had a long treatment relationship with Scialdone (112 sessions over three years), he specializes in psychiatry, and his opinion is consistent with the record as a whole and his own treatment notes. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). The ALJ violated the treating physician rule when he discounted Dr. Supnick's opinion without providing "good reasons" for doing so.

### C. The ALJ's Assessment of the Other Medical Opinions of Record

"The treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quotation marks and citation omitted). This rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." *Id.* (citation omitted) (alterations in original).

The ALJ afforded "great weight" to the opinion of state agency review consultant T. Harding, Ph.D. who opined that Scialdone's impairments would not prevent him from working. Tr. 39 (citing Tr. 83-92, 284-85). The ALJ gave great weight to this opinion based on its purported "consisten[cy] with the record as a whole," yet the ALJ did not explain this conclusion or cite any evidence that supported Dr. Harding's assessment.

The ALJ also afforded "significant weight" to the opinion of consultative examiner Adam Brownfeld, Ph.D. who opined that Scialdone could perform simple, unskilled work. Tr. 39 (citing Tr. 279-83). The ALJ gave significant weight to this opinion based on its consistency with "the objective medical evidence found in the record," but the ALJ failed to cite to any such evidence. Tr. 39. The ALJ also gave significant weight to this opinion because it was consistent with Scialdone's RFC (*Id.*), however, "the ALJ cannot give medical opinions weight based on their consistency with the RFC, as such reasoning is circular and flawed." *See Simmons*, 2016 WL 1255725, at *15.

Here, Dr. Supnick evaluated Scialdone during 112 sessions over three years and therefore was better positioned to evaluate his disability than Dr. Harding, who only reviewed the medical record and never examined Scialdone, and Dr. Brownfeld, who examined Scialdone one time. Tr. 293, 299. Moreover, the ALJ offered only conclusory reasons for affording weight to Dr. Harding and Dr. Brownfeld's opinions and failed to demonstrate how those opinions were consistent with the evidence of record.

### D. Remand for Calculation of Benefits

Scialdone argues that the Commissioner's decision should be reversed and that this matter should be remanded solely for the calculation of benefits because Dr. Supnick's opinion establishes that he is disabled pursuant to the Commissioner's regulations. ECF No. 12-1, at 17-20. The Court agrees.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v.*

12

*Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when such an instruction would prove unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

As discussed above, Dr. Supnick's opinion, which was entitled to controlling weight, establishes that Scialdone is disabled. Dr. Supnick opined that Scialdone cannot return to his former occupation and should not perform other full-time work because he cannot "tolerate the stress of work and interpersonal contact with others," which leads to increased depression and suicidal ideation. Tr. 299. Dr. Supnick also opined that Scialdone has "extreme" limitation in his ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to work pressures and changes in a usual work setting. Tr. 301. Moreover, Dr. Supnick's treatment notes reflect that Scialdone routinely failed to show up for work due to stress, depression, and anxiety. Tr. 294. This is problematic because VE testimony established that an individual is unemployable if he needs additional breaks throughout the workday or is absent three days per month. Tr. 67.

Thus, additional proceedings would serve no purpose and would lead to further delay of Scialdone's claim, which has been pending for nearly four and a half years. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED. The Commissioner's decision is REVERSED and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 23, 2017
 Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court